NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2963
_____

NICHOLAS KRAMER; BRIAN MCGOVERN; PATRICK FAY; JOHN BADO;
STEFANO PETRILLO; MICHAEL STISE; VICTOR VARGAS

v.

CITY OF JERSEY CITY; JERSEY CITY POLICE DEPARTMENT; POLICE CHIEF
THOMAS J. COMEY, in both his official and individual capacity; MIDTOWN
OCCUPATIONAL MEDICINE; EDWARD F. BOYLAN, MD, or alternatively as an
employee of Midtown Occupational Medicine, LLC; DANIEL A. CARIONE; NY JOHN
DOES 1-13, fictitious names not yet known; CITY OF NEW YORK, for the New York
City Police Department

Nicholas Kramer; Brian McGovern; Patrick Fay,
Appellants
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 09-cv-03767 & 10-cv-00729)
District Judge: Honorable Peter G. Sheridan
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
November 15, 2011

Before: FUENTES and CHAGARES, Circuit Judges, and RESTANI, Judge[*]

(Opinion Filed: December 20, 2011)

_____
[*] Honorable Jane A. Restani, United States Court of International Trade, sitting by
designation.

_____

OPINION OF THE COURT
_____

FUENTES, Circuit Judge.

Jersey City police officers Nicholas Kramer, Brian McGovern, and Patrick Fay brought this action pursuant to 42 U.S.C. § 1983, alleging that their rights were violated when they were suspended from active duty for their use of legally prescribed steroids. They now appeal from the District Court's dismissal of their complaint insofar as it found that their § 1983 claims were barred by qualified immunity. We will affirm.

**I.**

We write primarily for the parties and recite only the facts essential to our disposition. On February 12, 2008, Captain Daniel Carione of the New York City Police Department ("NYPD") informed Jersey City Police Chief Thomas Comey that he was conducting an investigation into illegal anabolic steroid use among members of the NYPD and that subpoenaed records showed that numerous NYPD officers were purchasing steroids from a pharmacy in New York City. It had come to his attention, he wrote, "that members of law enforcement from New Jersey may have utilized [d]octors affiliated with the targeted pharmacy, purchasing illegal anabolic steroids and human growth hormone." (App. 89). He asked Chief Comey for a list of all Jersey City police officers so that it could be compared against the pharmacy records.

On February 20, 2008, officers Kramer, McGovern, and Fay (the "Officers"), among many others, were taken into custody by the Jersey City Police Department

2

Internal Affairs Unit. They were required to disclose the medications they were taking and to provide urine samples to test for their use of steroids. Each of the Officers was taking hormone replacement drugs prescribed by a licensed medical doctor to treat him for hypogonadism and erectile dysfunction. They had filled these prescriptions at various pharmacies, including the New York City pharmacy that was the subject of Captain Carione's letter. Dr. Edward Boylan evaluated the urinalysis results and recommended whether each officer was fit for duty. While the test results were pending, the Officers were placed on modified duty without their weapons. As a consequence of the tests and recommendations, McGovern and Fay stopped their medical treatment. Kramer unsuccessfully attempted to continue treatment at lower doses and was ultimately suspended without pay for 159 days on the basis of his unacceptably elevated levels of Testosterone/Epitestosterone.

The Officers brought this § 1983 action against the City of Jersey City, the Jersey City Police Department, Chief Comey, Dr. Boylan, and Captain Carione. Upon these defendants' Rule 12 motions to dismiss and for judgment on the pleadings, the District Court dismissed the § 1983 claims on the basis of qualified immunity, determining that the drug testing and placement on modified duty was reasonable in light of the information received, the government interest in regulating the police, and police officers' diminished expectations of privacy.[1]

---

[1] The Officers also asserted claims under the Americans with Disabilities Act ("ADA") and New Jersey law. The District Court dismissed the ADA claims for failure to state a claim under the statute and declined to exercise supplemental jurisdiction over the state law claims. The Officers do not challenge these determinations on appeal.

**II.**

On appeal, the Officers argue that the District Court's grant of qualified immunity was premature. Although "the Supreme Court has repeatedly stressed the importance of resolving immunity questions at the earliest possible stages of litigation," Curley v. Klem, 298 F.3d 271, 277 (3d Cir. 2002) (noting that qualified immunity is an entitlement not to stand trial rather than a mere defense to liability), the Officers contend that the District Court resolved the question of qualified immunity too early in their case. They argue that the District Court improperly considered facts outside the pleadings, in essence converting the Rule 12 motions into motions for summary judgment without notice, and determined the reasonableness of the defendants' actions without adequate factual development.[2]

**A.**

In particular, the Officers object to the District Court's observation that "[g]enerally, high steroid levels [are] linked to aggressive behavior," (App. 6), from which it inferred that drug testing, modified duty, and suspensions were reasonable measures taken to ensure that Jersey City police officers using steroids were neither dangerous nor unfit for duty. However, the Officers do not deny the uncontroversial proposition that high steroid levels have been linked to aggressive behavior. See generally Nat'l Inst. on Drug Abuse, Nat'l Insts. of Health, Pub. No. 06-3721, Research

---

[2] The District Court had jurisdiction over this matter under 28 U.S.C. §§ 1331, 1343, and § 1367. We have appellate jurisdiction over the District Court's final order of dismissal under 28 U.S.C. § 1291, and we exercise plenary review. See Yarris v. County of Delaware, 465 F.3d 129, 134 (3d Cir. 2006).

4

Report: Anabolic Steroid Abuse 5 (2006), available at

http://drugabuse.gov/PDF/RRSteroids.pdf.  We hold that the District Court did not err by

taking judicial notice of this relationship.

**B.**

Accepting plaintiffs' allegations as true and drawing all inferences in their favor,

see Torisky v. Schweiker, 446 F.3d 438, 442 (3d Cir. 2006), we agree with the District

Court that the Officers' allegations cannot establish a violation of their constitutional

rights.

Police officers "are members of quasi-military organizations, called upon for duty

at all times, armed at almost all times, and exercising the most awesome and dangerous

power that a democratic state possesses with respect to its residents—the power to use

lawful force to arrest and detain them."  Policemen's Benevolent Ass'n of N.J., Local 318

v. Washington Twp. (Gloucester County), 850 F.2d 133, 141 (3d Cir. 1988).  "The need

in a democratic society for public confidence, respect and approbation of the public

officials on whom the state confers that awesome power" is compelling.  Id.; see Nat'l

Treasury Employees Union v. Von Raab, 489 U.S. 656, 677 (1989).  At the same time,

police departments require "officers who are physically and mentally capable of working

in dangerous and highly stressful positions, sometimes over long periods of time."

Fraternal Order of Police, Lodge No. 5 v. City of Phila., 812 F.2d 105, 114 (3d Cir.

1987).  Thus, "police officers have little reasonable expectation that . . . medical

information will not be requested."  Id.

5

In light of the police officers' diminished expectations of privacy in their medical information, it is evident that Captain Carione did not violate the Officers' constitutional rights by informing Chief Comey that the Officers had been filling prescriptions at a pharmacy under investigation for selling illegal anabolic steroids. This Court has held specifically that a police department may require its officers to divulge information about prescription drug use so long as the information is directly related to the interest of the police department in ensuring that its officers are physically and mentally able to perform the job. Id. It follows that the Captain Carione and the NYPD may permissibly share such information with a sister police department.

Similarly, Chief Comey did not violate the Officers' constitutional rights by mandating that the Officers submit to urinalysis and relinquish their weapons while the results were pending. Government-imposed urinalysis is a search within the meaning of the Fourth Amendment and must therefore be "reasonable." Von Raab, 489 U.S. at 665. "[W]here a Fourth Amendment intrusion serves special governmental needs, beyond the normal need for law enforcement, it is necessary to balance the individual's privacy expectations against the Government's interests" to determine whether the intrusion may be reasonable even in the absence of a warrant and probable cause. Id. Thus, random urinalysis of police officers is reasonable because of the safety-sensitive positions they occupy. Policemen's Benevolent Ass'n, 850 F.2d at 141 (upholding a New Jersey township's random drug testing program for police officers); Von Raab, 489 U.S. 656, 677 (1989) (upholding the random drug testing of armed customs officers). Where, as here, only specific police officers are targeted, the search must be supported by

6

"reasonable suspicion." Copeland v. Phila. Police Dep't, 840 F.2d 1139, 1143 (3d Cir. 1988) (upholding the compulsory urinalysis of a police officer suspected of using illegal drugs); see also Ford v. Dowd, 931 F.2d 1286, 1289-90 (8th Cir. 1991); Carroll v. City of Westminster, 233 F.3d 208, 212 (4th Cir. 2000).

The reasonable suspicion standard is not difficult to meet, and it was met in this case. All that is required is objectively reasonable suspicion that the individual to be tested was inhibited in performing his or her duties because of illicit drug or alcohol use. See Copeland, 840 F.2d at 1144; Ford, 931 F.2d at 1292. Factors affecting the reasonableness of the suspicion may include the nature of the information received, the reliability of the source, and the degree of corroboration. Copeland, 840 F.2d at 1144. In this case, Chief Comey received verifiable information from a reliable source—the NYPD—that specific officers under his command were filling steroid prescriptions at a pharmacy in another city which was the target of an investigation into illegal steroid abuse. Under these circumstances, Chief Comey had a reasonable suspicion that the Officers' perception and judgment might be impaired by excessive steroid levels. It was therefore reasonable for Chief Comey and Dr. Boylan to test the Officers for such excessive levels and to relieve them of their weapons until it was confirmed that their steroid levels were within safe limits. See Von Raab, 489 U.S. at 671 ("[T]he public should not bear the risk that employees who may suffer from impaired perception and judgment will be promoted to positions where they may need to employ deadly force.").

7

## III.

Because the allegations in the complaint cannot establish a constitutional violation, we will affirm the District Court's order of dismissal.